## DOWNES v. TETER-HEANY DEVELOPMENT CO.

(Circuit Court of Appeals, Third Circuit. January 21, 1907.)

No. 10.

**1. PATENTS—INFRINGEMENT—PATENT FOR PROCESS AND PRODUCT.**

Where a patent includes claims for a process and also for the product of such process defined by reference thereto, the latter are to be construed in connection with, and are limited in scope by, the former, and are not infringed unless the process claims are also infringed.

**2. SAME—INSULATION OF ELECTRICAL CONDUCTORS.**

The Downes patent, No. 534,785, for a process for applying asbestos insulation to electrical conductors and the resulting product, the essential features of the process being the carding or brushing of the asbestos yarn or strand after it has been wound on the wires, in order to raise a nap and lay the fibers in one direction, construed, and *held* not infringed.

**3. SAME.**

The Downes patent, No. 709,001, for an improvement in the process of applying asbestos insulation to electrical conductors, which consists essentially in subjecting the insulation after its application to pressure alternately applied and released, in order to avoid its injury, in view of the prior art, must be limited to the means described for applying such pressure, which is by swaging, and is not infringed by a process in which the pressure is alternately applied and released by the use of rollers or dies.

Appeal from the Circuit Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 144 Fed. 106.

Philip Mauro and Reeve Lewis, for appellant.

H. E. Everding, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge. The appellant, who was the complainant below, filed his bill against the appellee, the defendant below, alleging an infringement by the defendant of two patents—one, No. 534,785, issued to the complainant February 26, 1895, and the other, No. 709,001, issued to the complainant September 16, 1902. The Circuit Court concluded that no infringement had been shown, and by

its final decree dismissed the bill of complaint. This decree is now before us to be reviewed.

The opening words of the specification of patent No. 534,785 are as follows:

"Be it known that I, Louis W. Downes, of Providence, Rhode Island, have invented a new and useful improvement in methods of and apparatus for insulating electrical conductors, which is fully set forth in the following specification: The present invention relates to a method of and apparatus for applying an insulating covering to electrical conductors. The said method and apparatus are especially designed for the production of an electrical conductor with an insulation composed of asbestos, and the insulated conductor produced by the new method and apparatus is included in the invention."

These words show that the patentee claims, as his invention, three things, viz., a process, an apparatus, and a product. There are nine claims in the patent. The first four of them are process claims, the fifth, sixth, and seventh are apparatus claims, and the eighth and ninth are product claims. The complainant alleges that the defendant has infringed the first and second process claims and the eighth and ninth product claims. These four claims are as follows:

"1. The described process of applying a fibrous insulating covering, such as asbestos, to an electrical conductor, which process consists in coating the conductor with an adhesive substance, wrapping or winding the fiber thereon, brushing or carding the latter to raise a nap and then pressing or compacting the fiber, substantially as set forth.

"2. In the manufacture of insulated electrical conductors, the improvement which consists in applying a fibrous covering of asbestos to the wire, brushing the fiber in one direction, and compressing and reducing it to a smooth surface and uniform diameter, substantially as described."

"8. As an article of manufacture, an electrical conductor having a compact, uniform covering of asbestos fiber, wound spirally thereon, matted, compressed and water-proofed substantially as described.

"9. As an article of manufacture, an electrical conductor having a thin, compact, uniform covering of asbestos fiber wound thereon and attached by adhesive substance, the fibers being matted and compressed into a coherent fabric, substantially as described."

It will be observed that in the part of the specification above quoted the product, the insulated conductor, is said to be produced "by the new method and apparatus" described in the patent. Each of the two product claims also shows, by the use of the words "substantially as described," that the product is the result of this "new method and apparatus." If the complainant had included in his patent no claims except the product claims 8 and 9, he could not have obtained thereafter another patent for the process, for the reason that the process and the product are substantially one invention or discovery. As was said in Mosler Safe Co. v. Mosler, 127 U. S. 361, 362, 8 Sup. Ct. 1151, 1152, 32 L. Ed. 182:

"After a patent is granted for an article described as made by causing it to pass through a certain method of operation to produce it, as, in this case, cutting away the metal in a certain manner and then bending what is left in a certain manner, the inventor cannot afterwards, on an independent application, secure a patent for the method or process of cutting away the metal and then bending it so as to produce the identical article covered by the previous patent, which article was described in that patent as produced by the method or process sought to be covered by taking out the second patent."

Consequently, in considering claims 8 and 9, it is necessary to read them in connection with the process described in the patent, and to limit the scope of the claims to a product which is the result of that process. If the defendant has not infringed process claims 1 and 2, it has not infringed the product claims 8 and 9.

· The prior art shows several attempts to produce commercially successful asbestos-covered electrical conductors. Such attempts are found in the Shuster patent, No. 213,458, issued in 1879, the Strong patent, No. 253,446, issued in 1882, and the Splitdorf patent, No. 383,-919, issued in 1888. In the Shuster patent the conductor was wound or braided with an asbestos yarn or strand. In the Strong patent the patentee says: ·

"I do not limit myself to any particular mode of applying the asbestos, other than winding the strands around the wire, as is the usual way of insulating wire."

Splitdorf expressly declares that he insulated his wires by using asbestos fibers which had first been made into a cord or thread. Strong, also, before winding the asbestos strands around his wires, submitted the wires "to a sizing of shellac or any suitable adhesive preparation"; and Splitdorf in his process said that, "if desired, the wire may be coated with gum before the asbestos is applied." Shuster, in his patent, said that:

"To render the wire or cable water-proof, a water-proofing composition or material of any suitable kind may be applied in any appropriate manner."

And Strong, in his patent, said that:

"In addition to the fibrous asbestos already described, there is applied over it a water-proof coating composed of a preparation of pulverized asbestos with pure vegetable oils, or other indestructible water-proof substance, making a permanent water-proof shield or covering for the asbestos insulation within."

In the Cuttriss patent, No. 455,789, issued in 1891, the patentee said that the insulated conductor made in accordance with the invention described therein "consists of a wire or metallic conductor surrounded by a jacket or sheathing of a material composed of loosely laid fibers felted or matted together." While the material preferred by him is cotton, he used it in the form of a flat, narrow strip or ribbon, called a "sliver," which he passed through boiling water and then drew through a contracted nozzle or die, whereby its fibers were slightly compacted or matted and its tenacity considerably increased. Then, said the patentee:

"While in this condition it is wound spirally around ·a wire, and by rubbing plates, or other means suitable for the purpose, it is compressed or packed, whereby it becomes, to a greater or less extent, determined by adjustment of said devices, felted or matted around the wire."

The prior art in the insulation of electrical conductors, it thus appears, included the following steps: (1) Coating the wire with a suitable adhesive gum; (2) winding the wire with an asbestos yarn or thread; (3) compressing or compacting the covering about the wire; and (4) applying a suitable water-proof coating or shield.

In patent No. 534,785 the complainant says:

"According to my present invention the wire, after being coated with a quick drying adhesive mixture, such as some form of gum, applied thereto by any suitable means, is covered with the asbestos fiber, wound spirally or otherwise thereon, by any suitable mechanism well known to those familiar with the art. The wire is then subjected to a finishing process consisting in, first, combing or brushing out the asbestos covering to remove all superfluous lumps, irregularities, etc., and laying the nap all in one direction; second, applying pressure to the covering whereby the fiber is matted together in a compact layer, the thickness being gradually reduced to a suitable point; third, applying a coating of a water-proofing and toughening compound, to protect the insulation from injury in handling, and to impart to it moisture-resisting properties. After these operations, the conductor is preferably passed again between pressure rolls and drawn through dies to impart a smooth finish and reduce the insulated conductor to an even diameter. The brushing or carding of the asbestos fiber is an important step of the process and contributes largely to the excellence of the finished product, and it is mainly to admit of this operation being successfully performed that the wire is coated with adhesive substance before applying the asbestos fiber, since I have found it impracticable to raise the nap properly unless the fiber is applied to the wire by the aid of an adhesive material. I therefore desire to cover broadly the improvement consisting in applying the fiber by means of an adhesive substance, and brushing, carding, or raising the nap, irrespective of the precise mode adopted for finishing the product."

The complainant then proceeds to describe the drawings of the apparatus or machinery which are annexed to his patent. These drawings show a conductor having a covering of asbestos yarn wound spirally thereon. The yarn is held to the surface of the wire, as the specification states, "by means of a quick drying adhesive gum." A brush is so attached to the machinery that "as the latter (the brush) rotates about the wire the nap is raised and laid all in the same direction, while all lumps and inequalities in the fiber are removed, bringing the covered conductor more nearly to a uniform diameter." The wire, with its adhering coating of brushed or carded asbestos, then passes through a series of pressure rolls properly regulated by set screws, whereby the coating of asbestos is compressed and matted. The specification also says:

"Obviously many variations may be introduced in the manner of finishing the product after raising the nap in the manner described, and in the character of the appliances used for performing the several steps of the process. It is also obvious that some of the steps of the process and parts of the described apparatus may be used without others."

The material steps in the process thus described, we think, are: (1) Coating the wire with a suitable adhesive gum; (2) winding the wire with an asbestos yarn or strand; (3) brushing or carding the asbestos yarn or strand while on the wire, in order to raise a nap and lay the fibers in one direction; (4) compressing or compacting the asbestos covering after it has been thus brushed or carded; and (5) applying thereto, if desired, a suitable water-proof coating or shield. All of these steps were old except the third, and the gist of the invention was in that third step. Indeed, the counsel for the complainant so declare in their brief. They say:

"There is no difficulty in understanding the several steps or operations specified in these claims. As already stated, the gist of the Downes process consists in brushing or carding the asbestos fiber before compressing; the effect of brushing or carding being to bring the fiber into such a condition that the

final step of compression has the effect of producing a thin, compact layer of practically uniform thickness."

The complainant's second patent, No. 709,001, is for an improvement in the process of manufacturing electrical conductors. In his specification the complainant says:

"The rapid introduction and use on a large scale of asbestos-insulated wire has heretofore been prevented by difficulties, first, in producing a fine yarn of this material; second, in reducing the thickness of the insulation on the wire to such an extent as to enable it to replace the cotton-insulated wire now in use."

The need of a thin coating of asbestos is asserted, and it is said that, while the previous patents of the complainant, among which he names his patent No. 534,785, have been quite successful, difficulties in the work of coating metallic conductors with asbestos insulation, as done under the previous patents, had retarded the industrial extension of the use of asbestos-insulated conductors. Says the complainant in the specification of his second patent:

"These difficulties consist in the injury done occasionally to the asbestos insulation in the carding and rolling thereof, particularly in the rolling, as the rolls quite frequently become clogged, and, catching the asbestos yarn, tear it off the wire. * * * After extensive experiments I have succeeded in avoiding the difficulties above referred to by my present invention, the principal feature of which consists in subjecting the asbestos insulation to pressure alternately applied and released. This pressure is preferably applied in the form of a rapid succession of blows uniformly distributed over the entire surface of the insulation, and acting to beat down and compress the same against the wire, or, in other words, the asbestos insulation is swaged or subjected to a swaging operation analogous to that employed in the working of metals."

After the wire has been gummed, wound with asbestos yarn, combed or brushed, and moistened, the specification says:

"The conductor, covered with moistened asbestos, next passes to the mechanism for compacting the insulation by the intermittent application and release of pressure. While any suitable mechanism may be employed for this purpose, that preferred is analogous to the ordinary swaging mechanism used in metal working."

The complainant then gives a description of his drawings of a swaging mechanism and of the final steps in the process, which description is followed by this statement:

"While I have described above the preferred manner and mechanism for carrying out my invention, it may, of course, be practiced in many other ways. The insulating covering may be applied to the conductor in any suitable form and manner and the rapid intermittent application and release of pressure effected by any suitable means."

The principal feature of this second patent is without doubt correctly stated in the specification to consist "in subjecting the asbestos insulation to pressure alternately applied and released." The preferred mechanism for applying and releasing the pressure is a swaging one. No other mechanism relating to this feature of the patent is described. The claims which are alleged to be infringed are the first, second, third, sixth, eighth, and ninth. Each of these claims includes the step of subjecting the asbestos covering to pressure alternately ap-

plied and released. As the first claim is the broadest of the number, it is sufficient to quote it. It is as follows:

"The herein described process of producing insulated electrical conductors, consisting in covering the conductor with a suitable insulating material and subjecting the insulation to pressure alternately applied and released, thereby compacting the insulation on the conductor."

We turn now to consider the defendant's process, which is as follows: A spool of wire is placed at one end of the defendant's machine. One end of the wire is attached to a second spool at the other end of the machine. By suitable apparatus the second spool, as it revolves, draws the wire from the first spool, through the various parts of the machine, and winds it about the second spool. In its progress from the first spool to the second the wire is first coated with an adhesive gum, then passes in close proximity to a toothed belt running, nearly at right angles to the wire, from a hopper containing flocculent asbestos. The teeth of the belt gather from the hopper and convey to the wire fibers of asbestos all lying longitudinally on the belt. Upon reaching the wire, which by suitable mechanism is made to rotate rapidly about its longitudinal axis, these fibers are attached to the sticky wire. The wire, with its coating of asbestos fibers, then passes through a die, which serves somewhat to compact the fibers about the wire, and which probably also serves in part as a guide to steady the wire as it passes next over or through an apparatus by which it is saturated with a compound called a "finishing solution." The wire next passes through a series of dies, by which the asbestos covering is still more compacted and reduced to a uniform thickness with a very smooth and even surface. It next passes over a heated plate, where the asbestos covering is dried, and finally to the second spool, on which it is wound as a finished product.

The defendant insists that there is no compacting of the asbestos covering in its process. But we feel very sure that this is not so. The effect of the dies is to compact the covering, and the finished product shows beyond all question that the covering has been compacted. In the defendant's process, however, there is no asbestos yarn wound around the wire, and there is no carding or brushing of the asbestos after it is attached to the wire. The defendant's process does not contain the third step of the complainant's process, unless the defendant, as the complainant contends, simply inverts the order of the steps in the complainant's process. The complainant's contention is that the defendant, by the use of the conveyor belt and the hopper filled with flocculent asbestos, secures the condition which constitutes the essential element of the complainant's process, and that it does so merely by changing the order of the steps in the complainant's process. The argument is that the complainant applies asbestos to the wire and then cards it, while the defendant cards the asbestos and then applies it to the wire. But what the defendant does is to place in the hopper a quantity of flocculent asbestos, and then draw from the hopper by means of a toothed belt fibers of asbestos, which are laid longitudinally on the belt and conveyed by it to the rotating wire. The carding thus done by the defendant is somewhat similar to the carding that must be

done in order to produce the yarn which the complainant uses in his manufacture.

The asbestos covering used by the complainant is subjected to two carding processes—one previous to its being twisted into a yarn, and the other after the yarn has been applied to the wire. The latter carding the defendant does not do, and that step of the complainant's process is wholly lacking. The defendant raises no nap on the surface of its wire by any process whatever. It simply attaches to the wire the loose fibers of asbestos, and then, saturating them with a suitable material, compresses the covering about the wire, so that the wire is incased in what has been aptly called "asbestos paper." This method of applying asbestos to the wire was wholly new. The complainant's expert, Mr. Shelton T. Cameron, was asked on cross-examination this question:

"The defendant applies its asbestos to the wire in a thin spread layer, does it not?"

The answer was:

"Certainly; but the defendant applies the asbestos in a thin spread layer in a way never before recognized in the art as possible in handling asbestos fiber. Prior to Downes' invention it had never been discovered that asbestos fiber, in the flocculent, fluffy form which such carded fiber assumes before it has ever been twisted or rolled or flattened, could be practically applied to the wire."

It may be that Mr. Cameron meant by this answer to convey the idea that the defendant's discovery of the method of applying asbestos in a thin spread layer was due to what the complainant had disclosed in his patent. Still, so far as the evidence shows, the discovery was not made by the complainant, but by the defendant. We think, therefore, that the defendant's process is in an essential respect different from that of the complainant, and that the first and second claims of the first patent in suit are not infringed.

Nor do we think the eighth and ninth claims of that patent are infringed. As already stated, these claims are for a product which is the result of the process referred to in the first and second claims. The product and the process are one invention or discovery. Furthermore, the samples of the complainant's product submitted to us show that the asbestos coating still preserves to some extent its yarnlike character, and it is possible to remove the covering from the wire by pulling the yarn or thread therefrom. The complainant's expert, Mr. William D. Wright, says:

"Asbestos paper is very susceptible to abrasion, while the asbestos covering on Mr. Downes' wire is in the form of an asbestos thread, which in itself is much tougher than paper, and from the method of manufacture this covering appears to be formed into a hard mass, thoroughly filled with insulating compound, which makes a very tough covering."

If the carding done on the wire by the Downes process results in straightening out all the fibers of the asbestos thread, so that its threadlike character is completely destroyed, it is difficult to understand how the asbestos thread aids in toughening the covering. We think that the statement made by Mr. Wright is equivalent to an admission that in the Downes process the asbestos thread is not wholly destroyed, and

that the carding done by Downes straightens out only a portion of the fibers of the thread. Indeed, the counsel for the complainant themselves say in their brief:

"The effect of this brushing or carding is to convert a large part [they do not say the whole] of the asbestos left on the wire into a flocculent or fluffy covering, spread over the entire surface, a condition most suitable for a further process of compacting and matting into a smooth, even coating."

As the defendant in its process uses no asbestos thread or yarn, none appears in its finished product. In this respect it is unlike the finished product of the complainant.

The complainant also insists that the defendant, by passing its asbestos-covered wire through a series of dies, subjects the covering to pressure "alternately applied and released," and thereby infringes the second patent. The defendant's dies are not contiguous, but are separated by short spaces. Mr. Cameron says:

"They might be so constructed, with a flaring opening at the side where the wire emerges from each die, as to enable the pressure to be released before the wire actually emerges from the body of the die; and, if they were so constructed, the dies might abut each other and still operate to subject the insulation to pressure alternately applied and released."

Unquestionably this is so, and the inference which we presume Mr. Cameron thinks we should draw from his answer is that if the dies are separated by short spaces, without flaring openings, pressure would be alternately applied and released; and this inference, we think, is a necessary one. But the only method of applying and releasing pressure described by the complainant in his second patent is by a succession of rapid blows. The question therefore arises: Can the complainant's second patent be construed so broadly as to include a method of applying and releasing pressure by a succession of dies? We think the prior art will not permit of such a construction. In the Albasini patent, No. 614,819, issued in 1898, the patentee describes a process for insulating wire with asbestos which, in substance, is as follows: The wire is covered with asbestos in the form of a sliver. It is then passed through a revolving cylinder, having a conical bore, from the larger to the smaller end of the bore. The covering is thereby compressed. After being released from that pressure, it is again passed through a set of three conically shaped rollers, which follow one another in revolving about the wire and serve still more to compress the covering.

One of the claims is this:

"In combination in an apparatus for covering wire with asbestos, the rotary cylinder having a conical opening through it, and the conical rollers carried at one end of the cylinder, substantially as described."

Here we have pressure applied by a rotating cylinder, which really is a rotating die, and by each of the set of three rollers, which are pressure rolls, and between the cylinder, or die, and the set of rollers, or pressure rolls, and also between each roller and the next succeeding roller, the pressure is released. In other words, the Albasini patent describes a process in which the pressure is alternately applied and released by the combined use of a die and pressure rolls. In the

150 F.—9

complainant's first patent, also, pressure is alternately applied and released by the use of a series of sets of pressure rolls. Each set contains three rolls, which are placed 120 degrees apart and revolve about the wire. The specification says:

"After passing through a guide the wire is subjected to the action of a series of pressure rolls. In the machine shown there are two sets of these rolls (designated E and F in Figs. 1 and 2); but there may be more or less as desired. * * * The pressure of the rolls being properly regulated by set screws, they compress and mat the asbestos fiber, reducing gradually the thickness of the insulated conductor to a suitable point."

But the complainant's counsel argue that nowhere in the prior art does it appear that pressure alternately applied and released is referred to as a step in the process of covering electrical conductors. While it is true that no such step is expressly mentioned in the prior art, would the complainant's second patent be valid if, instead of specifically describing a method of alternately applying and releasing pressure by a succession of blows, it specifically described a method of alternately applying and releasing pressure by the apparatus of the Albasini patent or that of the complainant's first patent? Manifestly not, for there would be nothing new in the step thus specifically described. How, then, can the complainant's second patent be so construed as to include the methods of alternately applying and releasing pressure which, though not specifically mentioned, are actually employed in the Albasini patent and in the complainant's first patent? We think it cannot be done. If the complainant's second patent be so construed as to limit it to a method of alternately applying and releasing pressure by a succession of blows or impacts, it seems to have novelty and to be a patentable invention. But it cannot include the method of alternately applying and releasing pressure by the use of rollers or dies. In the defendant's process dies only are used, and such a process is not an infringement of the complainant's second patent.

The decree of the Circuit Court is affirmed, with costs.