HIDE-ITE LEATHER CO. et al. v. FIBER PRODUCTS CO. et al.

(Circuit Court of Appeals, First Circuit. July 16, 1915.)

No. 1121.

1. PATENTS ⚖175—DESCRIPTION OF PRODUCT—LIMITATION BY PROCESS CLAIMS.

A new product, having definite characteristics by which it may be identified, and which distinguish it, apart from the process by which it was produced, may be properly described by such characteristics in a claim of a patent containing also process claims, and when so claimed and described the claim is not limited to the patented process; but if it is not described by such definite identifying characteristics, but is set forth in the terms of the process, nothing can be held to infringe the claim which is not made by the process.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250, 250½; Dec. Dig. ⚖175.]

2. PATENTS ⚖328—VALIDITY AND INFRINGEMENT—WATERPROOF LEATHERBOARD.

The Buffum and Carter patent, No. 965,152, for waterproof leatherboard and process of making same, is valid, but claim 5, which is for the product, is limited to that produced by the process described in the specification, and, as so construed, held not infringed.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the Hide-Ite Leather Company and another against the Fiber Products Company and another. Decree for defendants, and complainants appeal. Affirmed.

William K. Richardson, of Boston, Mass. (Harrison F. Lyman, of Boston, Mass., on the brief), for appellants.

Lucius E. Varney, of New York City (Frederick L. Emery, of Boston, Mass., on the brief), for appellees.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. The plaintiffs, the Hide-Ite Leather Company and the Newton Company, are respectively the exclusive

licensee and owner of United States patent No. 965,152, issued July 26, 1910, to Buffum and Carter, and complain of its infringement by the Fiber Products Company and the Waterproof Leatherboard Company, the latter being the successor of the former. The patent is for improvements in waterproof leatherboard and the process of preparing the same; and by leatherboard is meant a product made from a pulp material or mixture containing fibers in whole or in part composed of tanned leather.

· The claims in issue on this appeal are Nos. 1, 2, and 5; the first two claims are for a process, and the last is for a product. The claims read as follows:

"1. The herein described process of producing a waterproof leatherboard, which consists in preparing a pulp mixture containing fibers of tanned leather, rendering the same receptive to waterproofing agents by an alkaline treatment, precipitating insoluble waterproofing compounds in said mixture and subsequently forming the pulp into the desired product.

"2. The herein described process of producing a waterproof leatherboard, which consists in preparing a pulp mixture containing fibers of tanned leather, rendering the same receptive to waterproofing agents by an alkaline treatment, mixing therewith a soluble compound of fatty acids and alkaline bases, adding thereto a precipitant adapted to react with the fatty acids to deposit an insoluble precipitate upon the fibers of the pulp, and subsequently forming the pulp into the desired product."

"5. A waterproof leatherboard made from pulp containing disintegrated fibers of tanned leather, and having insoluble waterproofing compounds deposited by precipitation upon and thereby intimately mixed with the fibers of which it is composed, substantially as described."

In the specification the patentees declare:

"We have discovered that a thoroughly and homogeneously waterproofed leatherboard results from our process, which consists essentially in subjecting the pulp fibers to an alkaline treatment, and then precipitating upon and throughout the fibers suitable waterproofing agents in an amount sufficient to produce an actual permanent waterproofing of the final product when finished."

The process is carried on in a beater, in which the pulp mixture is ground until it attains the desired degree of fineness, and then an alkaline substance, such as caustic soda or the like, is added to it. One result of the alkaline treatment is stated to be that the various acids contained in the mixture, and particularly the tannic or chromic acids contained in or derived from the leather, combine with the alkaline neutralizing agent and thereafter exist in the mixture as soluble salts of the alkali used. This makes up the first step of the process. The second step consists in adding to this mixture a solution of soap, in which term is meant to be included any compound which is soluble in water or the pulp mixture, and is formed by the chemical union of an alkali with one or more of the fatty acids. Having operated upon the mixture in the beater for about an hour to secure the equal distribution of the soap upon the fibers of the pulp, a precipitant is added which reacts with the soap, to precipitate an insoluble waterproofing compound in and upon the pulp mixture. Alum, aluminum sulphate, and copperas are among the precipitants used. After the pulp mixture has been operated on in the beater for another hour, it is then rolled out into sheets.

In the District Court it was held that the patent possessed commercial merit, and was useful; that it had not been anticipated by prior patents or prior uses, and was novel; and that both defendants had made use of the patented process and had infringed all the claims in issue to the extent that in making waterproof leatherboard they had used the alkaline step with the subsequent step of the process. The court, however, held that, in so far as the defendants had used a preliminary washing step for the alkaline step to render the fibers receptive to the waterproofing compound, there was no infringement of the process claims, because he did not regard the washing step as a well-known equivalent of the alkaline step; and, as to claim 5, he held that the product of that claim included only such waterproof leatherboard as had been produced by the process of the patent or its equivalent. The court refused to enjoin the defendants, or either of them, from making use of a process, or manufacturing a product, not involving the preliminary alkaline step, and the plaintiffs appealed. They assign as grounds of appeal that the court erred in restricting claim 5 to the process of the patent, or its equivalent, and in holding that the process claims were limited to the preliminary alkaline step.

The defendants, in the presentation of their case on this appeal, among other things, have contended that the patent did not possess commercial merit, that it was anticipated by prior patents and prior uses, and that there was no evidence warranting a finding that they had made use of the patented process. We have carefully examined the proofs in relation to these matters, and without going into a detailed discussion of them regard it as sufficient to say that we are satisfied the conclusions reached by the District Court were right, and shall confine ourselves to a consideration of the questions specifically raised by the plaintiffs.

[1, 2] It is a well-recognized rule that a new product, having definite characteristics by which it may be identified, and which distinguish it apart from the process by which it was produced, may be properly described by such characteristics, and when so claimed and described the claims are not limited to the process. Maurer v. Dickerson, 113 Fed. 870, 51 C. C. A. 494. It is also a well-recognized rule that, although a product has definite characteristics by which it may be identified apart from the process, still, if in a claim for the product it is not so described, but is set forth in the terms of the process, nothing can be held to infringe the claim which is not made by the process. Cochrane v. Badische Anilin & Soda Fabrik, 111 U. S. 293, 312, 4 Sup. Ct. 455, 28 L. Ed. 433. The proofs in this case disclose that claim 5 of the patent sets forth neither physical nor chemical characteristics by which the product may be identified, and the language of the claim indicates an attempt to define the product in the terms of the process, rather than by its characteristics. Indeed, the patentees, in describing their product, have only set forth the second step of the process, and the question is presented whether the District Court in view of the language used in this claim, when read in the light of the specification, erred in holding that the claim was

restricted to the process or its equivalent. The specification of the patent states:

"This invention * * * includes the product resulting from the process hereinafter described as well as the process itself."

The process "hereinafter described," as heretofore pointed out, includes the preliminary alkaline step. The product claim, although it refers to the process in a limited way, shows, by the use of the words "substantially as described," that the product is the result of the process described in the specification. The reasonable conclusion is that the patentees, in this claim, intended to describe their product by the process set forth in the specification, and not by a different process. That such was the understanding of the Patent Office in allowing the claim, and of the patentees in presenting reasons for its allowance, is fully shown by the file wrapper and proceedings in the Patent Office. We are therefore of the opinion that the conclusion reached by the District Court as to this matter was correct.

The plaintiffs further contend that the preliminary washing step employed by the defendants was a well-known equivalent for the alkaline step, and that the District Court erred in restricting the process claims to the alkaline step. It will be noticed that, in both claims 1 and 2, it is contemplated that the pulp mixture containing fibers of tanned leather shall be rendered receptive to waterproofing agents by an alkaline treatment. In the specification it states that:

"One result of this alkaline treatment is that the various acids and weak acid compounds contained in the mixture, and particularly the tannic or chromic acids contained in or derived from the leather, combine with the alkaline neutralizing agent, and thereafter exist in the mixture as soluble salts of the alkali used."

And again it says that:

"The alkali used in our process also has the important function of neutralizing and converting into soluble salts the acids—i. e., the tannic acid, chromic acid, or their equivalents—which were employed in effecting the transformation of the rawhide into leather, thereby preventing the premature precipitation of the waterproofing compounds within the pulp mixture, as well as removing the acids from the leather fibers, and leaving them receptive to the waterproofing treatment, as already indicated."

It is apparent from the language of these claims, when read in connection with the specification, that they do not contemplate the withdrawal of the tannic acids from the mixture before the waterproofing compounds are introduced, as is necessary when the preliminary washing step is employed, and that the purpose and effect of the introduction of the alkaline substance is to remove the acids from the tanned leather, retain them in the solution neutralized as soluble salts, and thus prevent a premature precipitation of the waterproofing compounds before they are thoroughly mixed with the pulp mixture. The mode of operation being different, we do not regard the preliminary washing step as the equivalent of the alkaline step.

Furthermore, it was conceded in the court below, and no contention to the contrary is made here, that the defendants, by using the preliminary washing step, did not infringe claim 3 of the patent.

Claim 3 does not differ from claims 1 and 2, except in the language used. It states the chemical action of the alkaline treatment, while they do not; but, when they are read in the light of the specification, they mean the same thing, and are not broader than claim 3.

For these reasons, we are of the opinion that the defendants, by using the preliminary washing step, do not infringe either of these claims.

The decree of the District Court is affirmed, with costs to the appellees.

PUTNAM, Circuit Judge, concurs in the result.