## SKEFFINGTON, Immigration Com'r, v. KATZEFF et al.

(Circuit Court of Appeals, First Circuit. January 11, 1922.)

No. 1508.

**1. Aliens ⊜═53—May be deported for any reason deemed sufficient by Congress.**

An alien resident in the United States may be deported for any reason which Congress has determined will make his residence here inimical to the best interests of the government.

**2. Aliens ⊜═54—Deportation hearing need not be conducted under rules applying to criminal trials.**

Deportation, when ordered by the proper executive officer of the government, is not visited on the alien as a penalty for any crime, and the fact that the reason assigned for his deportation may constitute a crime under the local laws does not make the deportation hearing a trial in a criminal case, to be conducted under the rules of evidence that apply to such a trial.

**3. Aliens ⊜═54—Decisions of executive officers, arrived at after fair hearing, final.**

The decisions of executive officers charged with the execution of the deportation statutes, if arrived at after a fair hearing and on substantial evidence, and with no abuse of the discretion committed to them by statute, are final.

**4. Aliens ⊜═54—Finding in deportation proceeding may be reversed, when unauthorized or not sustained by evidence.**

While the findings of fact by executive officers in deportation proceedings are final, yet, if they are not authorized by the statute, or are not sustained by substantial evidence, they may be reversed.

**5. Habeas corpus ⊜═111(1)—Error to discharge alien ordered deported, when all evidence not before the court.**

On habeas corpus by an alien, ordered deported by the Assistant Secretary of Labor, it is error for the court to order his discharge, where it does not appear that all the evidence presented to the Assistant Secretary is before the court.

**6. Aliens ⊜═53—Member of Communist Party bound by declarations of purposes in manifestoes and constitution.**

As respects liability to deportation, under Act Oct. 16, 1918 (Comp. St. Ann. Supp. 1919, § 4289¼b), as a member of an organization believing in, teaching, or advocating the overthrow by force or violence of the United States government, a member of the Communist Party, who in his application declared his adherence to the principles and tactics of the party and the Communist International, is bound by the declarations of purposes and program found in the manifesto of the Communist International, or in the manifesto and constitution of the Communist Party of America.

**7. Aliens ⊜═54—Immigration officials warranted in finding that force and violence was contemplated by Communist Party.**

The declarations of purposes and program found in the manifesto of the Communist International, and manifesto and constitution of the Communist Party of America, advocating the disarmament of the armed forces of the existing state, the arming of the laborer, and formation of a Communist army to protect the proletariat, *held* substantial evidence warranting the immigration officials in finding that force and violence are necessary instrumentalities for the accomplishment of such purposes, and are contemplated.

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

277 F.—9

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Habeas corpus by Morris Katzeff, on relation of William T. Colyer and others, against Henry J. Skeffington, Commissioner of Immigration. From a decree (265 Fed. 17) discharging the petitioners, the respondent appeals. Reversed, petition denied, and relators remanded to the Commissioner's custody.

Essex S. Abbott, Sp. Asst. U. S. Atty, of Haverhill, Mass. (Robert O. Harris, U. S. Atty., and Lewis Goldberg, Sp. Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellant.

Harry Hoffman and Morris Katzeff, both of Boston, Mass. (Hoffman & Vernon, of Boston, Mass., on the brief), for appellees.

Before BINGHAM and JOHNSON, Circuit Judges, and BROWN, District Judge.

JOHNSON, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the District of Massachusetts ordering the discharge upon a petition for a writ of habeas corpus of William T. Colyer and Amy Colyer. Frank Mack and Lew Bonder were the relators in another petition and, the issue upon appeal being the same in both cases, they have been heard as one case.

The relators were arrested on January 3, 1920, upon warrants issued by the Department of Labor on the charge that they were included within the class of persons covered by the Act of Congress approved October 16, 1918, Comp. Stat. Ann. Supp. 1919, § 4289¼b (1), which, so far as material, is as follows:

"Aliens who are members of or affiliated with any organization that entertains a belief in, teaches, or advocates the overthrow by force or violence of the government of the United States or of all forms of law, or that entertains or teaches disbelief in or opposition to all organized government * * * shall be excluded from admission into the United States."

The reasons assigned for their arrest and deportation were, in substance, that they were members of or affiliated with an organization that believed in, taught and advocated the overthrow by force and violence of the Government of the United States.

A hearing in accordance with this statute was had before the immigration inspector and his findings were submitted to the Commissioner General of Immigration and the Acting Secretary of the Department of Labor, together with his recommendation that they be deported. His findings and recommendation were reviewed and approved by the Assistant Secretary of Labor and a warrant for the deportation from this country of each of the relators was issued by him.

The District Court has ordered the relators discharged on the ground that there was no evidence before the immigration inspector tending to show that the Communist Party, to which the relators admitted they belonged, believes in, advocates, or teaches the overthrow of the United States government by force or violence, within a fair

meaning of the words "overthrow, force, and violence" as used in this act.

It is conceded that the relators were all aliens, three of them subjects of Great Britain, and one a subject of Russia. It was found by the District Court that they were all afforded a fair hearing before the inspector, and this finding is admitted to have been warranted by the facts.

[1] It is too well settled by the decisions of the Supreme Court of the United States to require any citation of authorities that an alien resident in the United States may be deported for any reason which Congress has determined will make his residence here inimical to the best interests of the government.

[2] Deportation, when ordered by the proper executive officer of the government, is not visited upon the alien as a penalty for any crime, and the fact that the reason assigned for his deportation may constitute a crime under the local law does not make the hearing upon deportation a trial in a criminal case, to be conducted under the rules of evidence that apply to such a trial. Bugajewitz v. Adams, 228 U. S. 585, 591, 33 Sup. Ct. 607, 57 L. Ed. 978; Sibray v. United States, 227 Fed. 1, 7, 141 C. C. A. 555; United States v. Uhl (C. C. A.) 266 Fed. 34, 39.

[3] It has also been definitely settled and is not controverted that the decisions of the executive officers charged with the execution of the Deportation Act, if arrived at after a fair hearing and upon substantial evidence and with no abuse of the discretion committed to them by the statute, are final.

In Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 Sup. Ct. 734, 735 (56 L. Ed. 1165), the court said:

"A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final."

In United States v. Uhl (C. C. A.) 271 Fed. 676, a case decided February 2, 1921, in the Second Circuit, it was said:

"Review by the District Court, or on appeal by this court, is limited to habeas corpus. United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917; and such review extends only to the inquiry whether the discretionary powers of the executive (large as they are) have been exceeded. There is no judicial power to review or reverse a finding of fact based upon evidence. * * * And this court has recently pointed out that, while we may inquire on habeas corpus as to whether the deportation proceedings have been fair, the rules of evidence do not in strictness apply (Diamond v. Uhl [C. C. A.] 226 Fed. 34), and the hearing, though it must be fair, may be summary, and the findings of fact made by the executive department are conclusive (Rakics v. Uhl [C. C. A.] 266 Fed. 646)."

[4] While the findings of fact by executive officers are final, yet, if such findings are not authorized by the act or are not sustained by

substantial evidence, they may be reversed. Zakonaite v. Wolf, 226 U. S. 272, 274, 33 Sup. Ct. 31, 57 L. Ed. 218; Kwock Jan Fat v. White, 253 U. S. 454, 457, 40 Sup. Ct. 566, 64 L. Ed. 1010.

The question, then, presented upon this appeal is narrowed to this: Whether there was any substantial evidence which justified the order of deportation for the reason assigned.

The record contains no report of any oral testimony taken before the Inspector and reported to the Secretary of Labor. The only evidence reported consists of the government exhibits which contain the manifesto and program of the Communist International and the manifesto program and constitution of the Communist Party of America.

[5] It is not clear that the judge sitting in the District Court had before him all the evidence that was presented to the Secretary of Labor and upon which he based his order of deportation, and it does not affirmatively appear in the record that he did. If the court below did not have before it all the evidence considered by the Secretary of Labor relating to the ground upon which the deportation was ordered, it was not within the power of that court, nor is it within the power of this court, to say whether the evidence before the Secretary was sufficient to warrant the finding upon which the deportation was ordered or not. For this reason alone we think the court below erred in discharging the respondents. But if it be assumed that the District Court had all the evidence before it that was before the Secretary of Labor, and that it consisted solely of the government exhibits containing the manifesto and program of the Communist International and of the manifesto program and constitution of the Communist Party of America, the question is whether these documents offered substantial evidence to justify the deportations for the reason assigned.

We have carefully examined these exhibits for the purpose of ascertaining whether they contain statements which, giving to language its ordinary meaning, would warrant any reasonable mind in reaching the conclusion that the Communist Party teaches or advocates the overthrow by force and violence of this government as now constituted.

[6, 7] Following are some of the declarations of purposes and program which, whether found in the manifesto of the Communist International or in the manifesto and constitution of the Communist Party of America, are binding upon a member of the latter, for in the application for membership the applicant declares "his adherence to the principles and tactics of the party and the Communist International":

"Communism does not propose to 'capture' the bourgeoise parliamentary state, but to conquer and destroy it. As long as the bourgeoise state prevails the capitalist class can baffle the will of the proletariat. * * *

"The state is an organ of coercion. * * *

"Therefore it is necessary that the proletariat organize its own state for the coercion and suppression of the bourgeoise. Proletarian dictatorship is a recognition of that fact; it is equally a recognition of the fact that in the communist reconstruction of society the proletariat alone counts as a class. * * *

"The proletarian class struggle is essentially a political struggle. It is a political struggle in the sense that its objective is political—overthrow of

the political organizations upon which capitalist exploitation depends, and the introduction of a proletarian state power. The object is the conquest by the proletariat of the power of the state. * * *

"The organized power of the bourgeoise is in the civil state, with its capitalistic army under control, of bourgeoise-junker officers, its police and gendarmes, jailers and judges, its priests, government officials, etc. Conquest of the political power means not merely a change in the personnel of ministries, but annihilation of the enemy's apparatus of government; disarmament of the bourgeoise, of the counter-revolutionary officers, of the white guard; arming of the proletariat, the revolutionary soldiers, the red guard of workingmen. * * *

"The revolutionary era compels the proletariat to make use of the means of battle which will concentrate its entire energies, namely, mass action, with its logical resultant, direct conflict with the governmental machinery in open combat. All other methods, such as revolutionary use of bourgeois parliamentarism, will be of only secondary significance. * * *

"Civil war is forced upon the laboring classes by their arch-enemies. The working class must answer blow for blow, if it will not renounce its own object and its own future, which is at the same time the future of all humanity.

"The communist parties, far from conjuring up civil war artificially, rather strive to shorten its duration as much as possible—in case it has become an iron necessity—to minimize the number of its victims, and above all to secure victory for the proletariat. This makes necessary the disarming of the bourgeoise at the proper time, the arming of the laborer, and the formation of a communist army as the protector of the rule of the proletariat and the inviolability of the social structure. Such is the red army of Soviet Russia, which arose to protect the achievements of the working class against every assault from within or without. The Soviet army is inseparable from the Soviet state."

We think it would be going far afield to say that, from such statements of purpose, no reasonable man could reach the conclusion that force and violence are the necessary instrumentalities for its accomplishment and are contemplated, and that, if consummated, it would overthrow government as now instituted. On the contrary, it seems to us that a program which advocates the disarmament of the armed forces of the existing state, the arming of the laborer and the formation of a Communist army to protect the rule of the proletariat, affords substantial evidence that the Communist Party, of which the relators are confessed and avowed members, teaches and advocates the overthrow of government by force and violence.

The entry in each case must be:

The decree of the District Court is reversed, the petition for writ of habeas corpus is denied, the writ is discharged, and the relators are remanded into the custody of the Commissioner of Immigration.