KENMOTSU v. NAGLE, Immigration Com'r.
No. 6222.

Circuit Court of Appeals, Ninth Circuit.
Nov. 17, 1930.

Austin Lewis, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Albert C. Wollenberg, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

■ The appellant, who will be referred to hereinafter as the petitioner, being held under a warrant of deportation issued by the Department of Labor, brought his petition for a writ of habeas corpus to the District Court. After hearing had, he was remanded to the custody of the immigration officers. This appeal was then prosecuted. Whether the appeal has merit depends upon the answer to be made to the contention that the immigration officers acted without sufficient evidence.

The charge supporting the warrant of deportation was that petitioner, an admitted alien, was a member of or affiliated with "an organization, association, society, or group that believes in, advises, advocates, or teaches the overthrow by force or violence of the government of the United States or of all forms of law; and that he is a member of or affiliated with an organization, association, society, or group that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue or display, written or printed matter advising, advocating, or teaching the overthrow by force or violence of the Government of the United States or of all forms of law." See Immigration Act, title 8 U. S. Code, § 137 (8 USCA § 137).

On December 14, 1929, there was a Communists' gathering or "demonstration" at a place on the streets of San Francisco. At that time, various placards were carried and displayed by persons attending the gathering and pamphlet matter or circulars were offered for sale. Petitioner was present as a member of the Communist Party. In his statement made to the immigration officers, he admitted his membership in that party, stated that the headquarters were in New York City, with local headquarters on Turk street, in San Francisco; that the Communist Party desired to change the form of government not only in the United States but all over the world; that the program in the city of San Francisco was just the same as elsewhere; that the world headquarters of the Communist Party was at Moscow, Russia. When his attention was called to the wording of one of the placards or banners displayed at the meeting referred to, which read, "Turn Imperialist War into Civil War against American Imperialism," and he was asked what that signified, he said: "Imperialist war is war against the working class. Therefore that war should therefore be turned into a civil war against American Imperialism." The examining inspector then asked:

"In other words, you advocate that a civil war of the working class be waged against the policies of the American Government, known as American Imperialism? A. Yes; that placard indicates just that.

"Q. Your organization advocates civil war?" A. "That is what the placard says and the organization advocates that."

In the course of the making of the statement, he also said: "While I am a member of the Communist Party I do what they say. * * *"

The placards and pamphlets displayed at the meeting contained various statements indicating the purpose of the Communists to be the overthrow of the present forms of organized government wherever they conflicted with the interest of what the Communists termed "the workers." Such terms as: "The organized might of the working class;" "The working class is beginning to mobilize its fighting forces for the struggle;" "Our party has shown that with the help of the Communist International, * * * it is able to defeat all influences of the bourgeoisie within the party and keep the party to the revolutionary line;" "In the United States we are now entering a period of maturing of great battles between the working class and the bourgeoisie;" "Workers of all countries must fight with all possible measures and weapons to defeat the imperialists and defend the Soviet Union;" "We have traced the course of the civil war (which though more or less concealed, goes on within extant society) * * * to the point at which it breaks out into open revolution, the point at which the proletariat, by forcibly overthrowing the bourgeoisie, establishes its own dominion;" "Communists scorn to hide their views and aims. They openly declare that their purposes can only be achieved by the forcible overthrow of the whole extant social order. Let the ruling classes tremble at the prospect of a Communist revolution. Proletarians have nothing to lose but their chains. They have a world to win. Proletarians of all lands unite!"

It would be difficult indeed to interpret these expressions as indicating that the Communists expected to obtain their ends by peaceable means, and the Immigration Department, in making up its conclusions, was not called upon to use ingenuity in devising possible inferences other than those which the language of the pamphlets and placards naturally suggested. At any rate, there was no such case of lack of evidence as will warrant this court in declaring that there was no basis for the deportation order. The printed matter here considered was not in its substance greatly different from that which the Supreme Court of the United States had before it in the case of Vajtauer v. Commissioner, 273 U. S. 103, 47 S. Ct. 302, 305, 71 L. Ed. 560. The court there said:

"But the extracts from the pamphlet and the report of the Chicago speech, taken together, are at least some evidence tending to show that the author of them advised and advocated opposition to all organized government and the overthrow of the United States government by violence. * * *"

Moreover, the right of the courts to review the action of the department having the authority to adjudge the facts extends only so far as to determine that the warrant of deportation was not arbitrarily issued, or issued as the result of an unfair hearing. Tisi v. Tod, Commissioner, 264 U. S. 131, 44 S. Ct. 260, 68 L. Ed. 590; Bilokumsky v. Tod, Commissioner, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221.

Judgment affirmed.