## STRECKER v. KESSLER, District Director of Immigration and Naturalization.

### No. 8680.

Circuit Court of Appeals, Fifth Circuit.

April 6, 1938.

C. A. Stanfield, of Hot Springs, Ark., for appellant.

Leon D. Hubert, Jr., Asst. U. S. Atty., of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, an alien, was held for deportation, upon a warrant finding him subject to deportation, under the Act of October 16, 1918, as amended by the Act of June 5, 1920, 8 U.S.C.A. § 137, in that he believes in or advocates or is a member of an organization that believes in, advises, advocates, or teaches, is a member of an organization that writes, publishes, or circulates written or printed matter advising or teaching, the overthrow by force and violence of the government of the United States. He applied for and obtained a writ of habeas corpus upon Eugene Kessler, District Director, who had him in custody. Afterwards, upon a hearing, there was an order discharging the writ, and remanding appellant for deportation. This appeal tests whether that order was rightly entered.

Appellant contends both that the hearings upon which the deportation order was based were so unfair as to constitute a denial of justice, and that the findings are without support in the evidence.

■ We find nothing essentially unfair about the hearings; as deportation hearings go, they were conducted with ordinary fairness. We agree with appellant, however, that the purported finding that he believes in and teaches, and belongs to or did belong to, an organization which believes in and teaches the overthrow by force and violence of the government of the United States, is without any support in the evidence, is a mere fiating. The proceedings as a whole, and the questioning and summary in particular, are dramatic illustrations of the tyranny of labels over certain types of mind. The evidence, and the only evidence relied on for the finding and order, is that during the presidential campaign of 1932, when one Foster was running as the white, and one Ford as the colored, candidate of the Communist Party of America, for President of the United States, appellant, in November, 1932, became a member of the Communist Party and accepted certain literature of the Communist Party for distribution. He testified that he was a member of the Communist Party of America until February, 1933, when he quit paying his dues, and that since that time he has not been a member. He did not testify, nor did any one else, that he believed in the overthrow by force and violence of the government of the United States, neither did he, nor any one else, testify that the organization he had belonged to, the Communist Party of America, taught, advocated, or incited such overthrow. None of the literature which he was supposed to have circulated in 1932 was introduced, but his book of membership in the Communist Party in the United States was. Not a word in this membership book advocated, incited, or even suggested that the government of the United States should be overthrown by force or violence. It did teach that the party is the vanguard of the working class; that it incorporates the whole body of experience of the proletarian struggle basing itself upon the revolutionary theory of Marxism, and representing the general and lasting interests of the whole of the working class. The record contained also, offered by the Bureau, extracts from a copy of the "Communist" dated April 1934, "8th Convention issue, a magazine of the theory and practices of Marxism and Leninism, published monthly by the Communist Party in the United States of America." Not a single extract from this magazine referred to the government of the United States of America directly or indirectly. There is a discussion in it of Austro-Marxism. There is, too, the cynical suggestion that the proletariat should learn the sly ways of the bourgeoisie to become masters of politics and of laws, so that "legality," instead of "killing the proletariat," would "kill the bourgeoisie," and the statement that the final overthrow of capitalism could not be accomplished without a mobilization of the workers for the struggle against it. There is, too, the general statement that the question of a violent revolution lies at the root of the whole of Marx's teachings, and that only Philistines or downright opportunists can talk about revolution without violence.

The evidence for Strecker makes him out a small bourgeoisie, a merchant, with a little capital, some canniness, a fair amount of human kindness, some bad habits, and apparently no quarrel with the government of the United States, but only with what he regards as the evils of capitalism as such, and with grafters holding government offices. He flatly denies, and no one disputed him, that he has ever taught or believed in the unlawful destruction of property, or the overthrow by force of the United States government, and in answer to the question, "Just what do you believe in in the way of government," replied, "I believe it is best like we have it here. We have a good constitution for the people by the people. We have a lot of grafters, as you know, that should be gotten rid of." He testified that he was not an anarchist, that he was not opposed to the United States government, and that he never knowingly joined an organization the purpose of which was to destroy the government. All of the literature he received when he joined in November, as he recalled it, was political, such as "Vote Communist in the November election"; that he never believed in nor taught sabotage, or the killing or assaulting of officers because they were officers. All that was proven against Strecker was that in 1932 he joined the Communist Party, and that he answered a foolish question—"Supposing that the majority of the populace of the United States were Communists, and were certain of a victory over Capitalism in an armed conflict, would you then personally bear arms against the present Government?" foolishly, according to its folly— "Certainly; I would be a fool to get myself killed fighting for Capitalism." This proof does not support the finding on which the warrant was based.

978

The statute under which these proceedings were instituted was enacted in 1918 and amended in 1920, to meet a situation caused by the crisis in Russia in 1918 and 1919, and the propaganda following that crisis for the overthrow of governments by force. It was enacted to enable the United States to expel from its shores aliens seeking a footing here, to propagandize and proselytize for direct and violent action. The decisions of the Circuit Courts of Appeal in Skeffington v. Katzeff, 1 Cir., 277 F. 129; Antolish v. Paul, 7 Cir., 283 F. 957; Ungar v. Seaman, 8 Cir., 4 F.2d 80, on the authority of which it was held in Ex Parte Vilarino, 9 Cir., 50 F.2d 582; Kjar v. Doak, 7 Cir., 61 F.2d 566, upon which the appellee relies here, that membership in the Communist Party of America alone is sufficient to warrant deportation, were rendered upon the Russian experience, and the record of the party at that time. They were all fact cases. They did not, they could not, decide that membership in the Communist Party of America, standing alone, is now sufficient to warrant deportation. The statute makes no such provision. Courts may not write it into the statute.

Much water, socially and politically, has gone under the bridge since 1920. Russia itself is more vigorously organized than almost any other country in the world, to prohibit and suppress those who teach and preach the overthrow of government by force. In this country, in the presidential elections of 1932 and of 1936, the Communist Party, seeking by political means rather than by violence, to remake the United States according to its heart's desire, into a government of the proletariat, by the proletariat, and for the proletariat, had a candidate for President. Nothing in our Constitution or our laws forbids the formation of such a party, or persons from joining them. The statute invoked here does not forbid membership in the Communist, or in any other party, except one which teaches the overthrow by force and violence, of the government of the United States.

It seems to me to be a kind of Pecksniffian righteousness, savoring strongly of hypocrisy and party bigotry, to assume and find that merely because Strecker joined the Communist Party of America, he is an advocate of, or belongs to, a party which advocates the overthrow by force and violence of the government of the United States. It seems to me, too, that the cause of liberalism is more retarded than advanced by forays for deportation on evidence like this. But whatever may be thought to be the propriety, from the standpoint of tolerance and liberalism, of this proceeding, it may not be doubted that, from the standpoint of its legality, a deportation order requires more than a mere fiating. There must be evidence in the record supporting the finding on which the order rests. Such evidence is wanting here.

The order is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

HOLMES, Circuit Judge, concurs in the result.