## UNITED STATES v. SCHNEIDERMAN.
### No. 21257-R.

District Court, N. D. California, S. D.
June 12, 1940.

Frank Hennessy, U. S. Atty., and Louis Mercado, Asst. U. S. Atty., both of San Francisco, Cal., for petitioner.

George R. Andersen, of San Francisco, Cal., and Robert Kenny, of Los Angeles, Cal., for defendant.

ROCHE, District Judge.

The United States Government seeks to cancel the decree of naturalization and certificate of citizenship granted to the defendant, William Schneiderman, a native of Russia, by the United States District Court for the Southern District of California. See 8 U.S.C.A. § 405.

The petition alleges that the defendant (1) illegally and (2) fraudulently obtained his citizenship status, contrary to the provisions of the Naturalization Act (8 U.S.C.A. § 382), inasmuch as on June 10, 1927, and for the preceding five years, he did not behave as a person of good moral character, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same, and on June 10, 1927, he concealed material facts from the District Court which awarded him his citizenship certificate. The government further alleges that during the period of five years from 1922 to 1927, when defendant was on citizenship probation, he was a member of certain organizations—the Young Workers League of America (which became the Young Workers Communist League of America in 1925), and the Workers Party of America—which were opposed to the principles of the Constitution and advocated the overthrow of the government by force and violence.

Defendant admits membership in the above-named organizations during the period in question, and admits belief in the principles of these organizations insofar as they followed the doctrines of Marx, Engels, Lenin and Stalin, but denies that the teachings of these men were incompatible with the principles of the Constitution. He denies that he has ever believed in, or has ever advocated, the use of force and violence for the overthrow of the government. He denies that he obtained his certificate of citizenship illegally or by fraud.

The question of canceling a citizenship certificate because of belief and behavior is discussed by the United States Circuit Court in the case of United States v. Tapolcsanyi, 3 Cir., 1930, 40 F.2d 255, 257. There, as in the case before this court, a communist was dealt with by the Circuit Court which ruled that the views of the defendant were incompatible with the principles of the Constitution of the United States. Such views consisted of belief in the establishment of a communist state. Defendant admitted his determination to achieve communism in this country, but insisted that he believed in peaceful methods for accomplishing his ends, as provided for in the Constitution. In reply to this argument, which emphasized means rather than ends, the court declared: "While no one may be deeply attached to every provision of the Constitution and while all citizens have a right to work for its amendment in an orderly way, that is a right of a citizen. The respondent approached that right * * * as an alien. As an alien he had no such right. * * * citizenship * * * is a privilege—a civil status conferring rights and immunities. The respondent alien of course was free to apply for the privilege which the sovereign government might refuse altogether or might grant on such conditions as it should impose. In this instance it imposed upon the respondent the indispensable condition that he be attached to the principles of the Constitution."

Whereupon the court concluded that respondent was not so attached to the Constitution of the United States, and that his citizenship certificate should be canceled.

Fundamental requirements of "attachment to the * * * Constitution" are set forth explicitly in the case of In re Saralieff, D.C., 1932, 59 F.2d 436. There, the court denied an alien's petition for naturalization because he believed in, and advocated, a social order in which the three branches of the government would be replaced by a single group, called producers, in whom all power would rest. He wished to abolish private property and substitute therefor the ownership of property by a communist state. The court declared that such beliefs, which necessarily included elimination of our dual system of government and a cessation of present representa-

tive methods, were incompatible with attachment to the Constitution.[1]

The purpose of communism has been held to be contrary to the principles of the Constitution in the Tapolcsanyi case and in the Saralieff case. The methods for attaining the communist goal have also been declared to be contrary to Constitutional principles, in the case of Branch v. Cahill, 9 Cir., 1937, 88 F.2d 545, 546, which held that communist organizations preach the use of force and violence to achieve their ends. In the Branch case, a ruling of the Department of Labor, in deportation proceedings commenced against an alien communist, was challenged. The court said: "There is * * * ample evidence to show that the Communist Party advocates 'the overthrow by force or violence of the Government of the United States.'" Upon proof of the alien's membership in the Party and his belief in the principles of communism, the court sustained the order of deportation. This decision is in accord with other deportation rulings in the Ninth Circuit.[2]

■ Since it has been held that belief in, and advocacy of, a communist state prevent an alien from being attached to the principles of the Constitution (In re Saralieff, above), it follows that membership in, and subscription to the principles of, communist organizations—which are directly affiliated with the Third Internationale—preclude attachment to the Constitution. Such membership not only gives rise to unconstitutional objectives (In re Saralieff, above), to be attained by unconstitutional means (Branch v. Cahill, above), but it also tends to make for divided allegiance between the United States of America and a world-wide Communist Society, with headquarters in Moscow, Russia.

In the case at bar, defendant has admitted membership in the Young Workers League of America (the Young Workers Communist League in 1925), and the Workers Party of America during his probationary period, and has admitted his continued membership in such organizations, which are affiliated with the Third Internationale and are now merged in the Communist Party. He has admitted that the two persons who acted as witnesses to his petition for naturalization were themselves communists. He has been active in Party affairs and has written articles for the "Daily Worker", a communist publication. He has expressed belief in the elimination of private property. He has admitted that he subscribes to the fundamental tenets of the Communist Party, and that he so subscribed during the five-year period in which he was an applicant for citizenship.

■ The government has placed in evidence many volumes of books and pamphlets which explain the doctrines of Marx, Engels, Lenin and Stalin, upon which the principles and practices of the Communist Party and its predecessor organizations are based. It has also called upon three witnesses, including defendant, to explain the position of the Communist Party and these predecessor organizations with respect to communist ends and communist means. The literature covers almost a century of economic and political thought, beginning with the publication of the Communist Manifesto in 1848. All of this printed material, together with the testimony of the witnesses, may be examined for the purpose of shedding light on the period between 1922 and 1927, when defendant was on probation. In addition, the court may note defendant's conduct, as outlined above, in order to throw light on his state of mind during the probationary period.

The evidence before the court makes it clear that defendant's organizations sought to establish "the dictatorship of the proletariat", as a primary goal in a vague and indefinite program looking toward the eventual creation of a classless society. The evidence further discloses that methods of force and violence were, and are, accepted as necessary for the attainment of this "dictatorship of the proletariat". "It would be difficult indeed to interpret [the many expressions set forth in the literature submitted in evidence] as indicating that the Communists expected to obtain their ends by peaceable means." Kenmotsu v. Nagle, 9 Cir., 1930, 44 F.2d 953, 955.

---

[1] But see United States v. Rovin, D. C.,1926, 12 F.2d 942; United States v. Ortner, 1933, No. E 234—Phœnix, Ariz.; Strecker v. Kessler, 5 Cir., 1938, 95 F.2d 976 (affirmed on different ground in 1938, 305 U.S. 587), 59 S.Ct. 102, 83 L.Ed. 371.

[2] Kenmotsu v. Nagle, 9 Cir., 1930, 44 F.2d 953; Saksagansky v. Weedin, 9 Cir., 1931, 53 F.2d 13; Ex parte Vilarino, 9 Cir., 1931, 50 F.2d 582; Sormunen v. Nagle, 9 Cir., 1932, 59 F.2d 398, 399; Wolck v. Weedin, 9 Cir., 1932, 58 F.2d 928.

The conclusion which this court reaches, after a careful reading of the writings placed in evidence and a review of the testimony of the several witnesses who appeared at the trial, is that the organizations to which defendant belonged were opposed to the principles of the Constitution and advised, taught and advocated the overthrow of the government by force and violence, and that defendant, by reason of his membership in such organizations and participation in their activities, was not "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same." In re Saralieff, above. Therefore, defendant obtained his certificate of citizenship illegally.

There is no merit to the defense of unconstitutionality of the naturalization law or in laches. United States v. Spohrer, C.C., 1910, 175 F. 440, United States v. Ali, D.C., 1925, 7 F.2d 728, and United States v. Marino, D.C., 1939, 27 F.Supp. 155. The government has maintained the burden of proof in the present proceeding (United States v. Rovin, D.C., 1926, 12 F.2d 942), by showing that defendant was not attached to the Constitution at the time he became a citizen. It is therefore ordered that the decree of naturalization and certificate of citizenship issued to the defendant be declared void and be set aside, upon preparation of findings of fact and conclusions of law by the government.