### Application of Julian Miles AVERY.

### Patent Appeal No. 74–625.

United States Court of Customs and Patent Appeals.

June 26, 1975.

Douglas E. Whitney, William H. Sudell, Jr., Wilmington, Del. (Morris, Nichols, Arsht & Tunnell, Wilmington, Del.) attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Gerald H. Bjorge, Washington, D. C., of counsel.

LANE, Judge.

## DECISION

This is an appeal from the decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of claims 1–23, all of the claims in application serial No. 26,118, filed April 6, 1970, for the "Metallothermic Production of Magnesium in the Presence of a Substantially Static Atmosphere of Inert Gas." We affirm.

### Background

The subject matter of the claims is a method of controlling the level of impurities in magnesium produced by the reduction of magnesium oxide:

$$2\ MgO + Si \longrightarrow 2\ Mg\ (\uparrow) + SiO_2$$

Magnesium oxide and a metallic reducing agent such as silicon react in the presence of a molten slag bath, and magnesium vapor is evolved. The magnesium vapor is evolved in a reaction zone and moves predominately by diffusion through a substantially static atmosphere of inert gas to a condensation zone.

By a "substantially static" atmosphere of an inert gas and the passage of magnesium vapor "predominately by diffusion" it is meant that the movement of the magnesium vapor is faster than the movement, if any, of the inert gas from the reaction zone to the condensation zone. That is, the magnesium vapor passes through the inert gas, rather than the other way around.

In view of the reaction set forth above, a low concentration of magnesium vapor in the reaction zone might be thought to be desirable to increase the driving force of the reaction. Indeed, prior processes transfer magnesium vapor from a reaction zone to a condensation zone essentially by vacuum distillation. However, appellant has found that the magnesium vapor pressure in the reaction zone can be increased without substantially decreasing the reduction reaction. In appellant's method, the magnesium vapor pressure immediately above the slag in the reaction zone is at least about 0.05 atmospheres, and preferably as high as possible, up to about 1.5 atmospheres. The total pressure of the system, including the vapor pressure of both magnesium vapor and inert gas, is at least 0.1 atmospheres and preferably about 0.25 to 1.5 atmospheres.

Reducing magnesium oxide ores under these conditions has been found to significantly increase the purity of the magnesium product obtained. Prior vacuum distillation processes, for example, are accompanied by substantial agitation of the molten slag bath in the reaction zone. As a result of this agitation and

the high vacuum conditions above the molten slag bath, small particles of contaminants are carried from the bath to the condensation zone, with a consequent contamination of the magnesium product. The relatively high pressures used in the present invention inhibit the movement of these small particles of contaminants, resulting in a purer magnesium product.

Claims 1, 17 and 23 are representative:

Claim 1.

1. A process for the production of magnesium in a reaction-condensation system in which magnesium oxide and a metallic reducing agent react in the presence of a molten oxidic slag to evolve magnesium vapor from a reaction zone to a condensation zone, and which includes the provision of a substantially static atmosphere of inert gas in the vapor space of the reaction-condensation zone, and wherein transfer of magnesium vapor from the reaction zone to the condensation zone takes place predominately by diffusion through said inert gas.

Claim 17.

17. A method of controlling the level of impurities in the product magnesium of a metallothermic process for producing magnesium by the reduction of magnesium oxide, wherein magnesium oxide and a metallic reducing agent react in the presence of a molten oxidic slag bath, and magnesium vapor is evolved from a reaction zone to a condensation zone predominately by diffusion, in the presence of a substantially static atmosphere of inert gas, and wherein the molal flow rate of the inert gas from the reaction zone to the condensation zone is less than the molal flow rate of the magnesium vapor, and which includes controlling the flow rate of inert gas.

Claim 23.

23. The magnesium product of the metallothermic process of claim 1, characterized in composition by a content of metallic impurities of less than about 1500 ppm, and of silicon of between about 50 and 300 ppm.

### The Rejections

The patents relied upon by the board are:

| | | |
|---|---|---|
| Parry | 2,497,096 | Feb. 14, 1950 |
| Bretschneider et al. | 3,017,263 | Jan. 16, 1962 |
| Peplinski | 3,312,456 | Apr. 4, 1967 |
| Magee et al. | 3,441,402 | Apr. 29, 1969 |
| | | (filed Dec. 15, 1965) |
| Avery | 3,658,509 | Apr. 25, 1972 |
| | | (filed Feb. 3, 1969) |

Parry discloses a process for continuously carrying out a reaction between solid material and a gas or vapor which uses external heating efficiently. A counter-current heat exchanger is described in which reactants fall downwardly through an externally heated, vertically arranged, elongated annular reaction zone. Gaseous products removed from the reaction zone are passed upwardly in indirect heat exchange relation to the falling reactants. The process is applied to the reduction of magnesium ores in high vacuum. Optionally in the reduction of magnesium ores in high vacuum, the reaction zone may be filled with a suitable inert gas, for example, hydrogen, helium or argon. The partial pressure of magnesium vapor in the reaction zone may be lowered to take account of the partial pressure of the inert gas so as to approximate the usual high vacuum conditions.

Magee et al. disclose a process for the continuous production of magnesium metal. A mixture of magnesium ores is heated with a reducing agent in an electric arc furnace. The furnace is operated at one atmosphere pressure. Magnesium vapor is withdrawn from the furnace and condensed to obtain liquid magnesium. Operation of the furnace at atmospheric pressure is said to be desirable for the continuous production of magnesium because feeding and discharging operations are simplified and stress on materials of construction is minimized.

Bretschneider et al. and Peplinski both disclose purified magnesium metal.

Bretschneider et al. for example disclose magnesium metal having the following composition: 99.93% magnesium, 0.02% silicon, 0.03% manganese, 0.01% calcium and 0.001% iron (calculated in percent by weight).

Avery, which issued to appellant on an application of which the instant application is a continuation-in-part, discloses a method of producing magnesium by the reduction of magnesium oxide by means of a metallic reducing agent, in the presence of a molten oxidic slag, wherein the system contains an inert gas. Claims 1, 2, and 4 through 7 of Avery read as follows:

1. A metallothermic process for the production of magnesium in a reaction-condensation system having a reducing furnace reaction zone and a condenser, which comprises charging a metallic reducing agent and magnesium oxide to the reaction zone, containing a molten oxidic slag bath at a temperature of at least about 1300°C., evolving magnesium vapor from the reaction zone to the condenser and condensing and recovering the magnesium as a product, wherein said evolving and condensing is done in the presence of an inert gas at a partial pressure of between about 1/10 and 5 atmospheres in said reaction-condensation system.

2. The metallothermic process of claim 1, wherein the inert gas is selected from the group consisting of helium, neon, argon and hydrogen.

4. The metallothermic process of claim 1, wherein the metallic reducing agent is selected from the group consisting of aluminum, silicon and aluminum-silicon alloys.

5. The metallothermic process of claim 1, wherein the absolute pressure of the reaction-condensation system is about ½ to 1 atmosphere.

6. The metallothermic process of claim 1, wherein the absolute pressure of the reaction-condensation system is about 1 atmosphere.

7. The metallothermic process of claim 1, wherein the partial pressure of the inert gas is about ½ to 1 atmosphere.

The examiner rejected claims 1 through 23 on the ground of double patenting over claims 1, 2, and 4 through 7 of the Avery patent. It appears the examiner intended an obviousness-type double patenting rejection. The board first considered whether the claims herein were for the *same invention* that is claimed in the Avery patent. The board did not enter a new ground of rejection under 35 U.S.C. § 101; see *In re Boylan*, 392 F.2d 1017, 55 CCPA 1041 (1968). The board then stated:

We are therefore in complete agreement with the rejection grounded on double patenting as presented by the Examiner and will affirm it.

Under the provisions of Rule 196(a) of the Rules of Practice in Patent Cases, 37 CFR 1.196(a), the quoted statement operates as an affirmance of the examiner's obviousness-type double patenting rejection, not otherwise mentioned in the board's opinion. At the oral hearing both parties took the position that there is both an obviousness-type double patenting rejection and a "same invention" type double patenting rejection before us.

The examiner also rejected claims 1 through 22 as obvious in view of Magee et al. taken together with Parry under 35 U.S.C. § 103, and the board affirmed. Claim 23 was rejected under 35 U.S.C. § 103 in view of Bretschneider et al. or Peplinski; the board affirmed.

The examiner rejected all the claims under 35 U.S.C. § 112 on the grounds of insufficient disclosure, undue breadth and an improper product-by-process claim. The board reversed each of the rejections under 35 U.S.C. § 112.

## OPINION

■ The proceedings below in this case again indicate the advisability of a restatement of the law of double patenting as enunciated by this court. *In re*

*Vogel,* 422 F.2d 438, 57 CCPA 920 (1970). The first question in the analysis is: Is the same invention being claimed twice? In *Vogel* we said that "same invention" means identical subject matter and suggested that the test is whether one of the claims being compared could be literally infringed without literally infringing the other. If it could be, the claims do not define identically the same invention. Applying the test of *Vogel* in the present case, we note that the claims on appeal are restricted to the use of a substantially static atmosphere of inert gas in the vapor space of the reaction and condensation zones. This substantially static atmosphere is defined such that the mass transfer of magnesium from the reaction zone to the condensation zone is predominately by diffusion. No such limitation appears in the claims of the Avery patent. The patent claims could be literally infringed without infringing the more restrictive claims on appeal. We therefore conclude that the same invention is not being claimed twice.

■■■ The second question in the analysis is: Does any claim in the application define merely an obvious variation of an invention disclosed and claimed in the patent? In considering the question, the patent disclosure may not be used as prior art. The patent disclosure may however be consulted to determine the meaning of terms in the patent claims. *In re Vogel, ibid., In re Buehler,* 515 F.2d 1134 (CCPA 1975). As we have noted, there is no limitation in the claims of the Avery patent with respect to the flow rate of the inert gas from the reaction zone to the condensation zone, *i. e.,* it is not stated whether or not the inert gas atmosphere is substantially static. The board referred to the specification of the Avery patent to ascertain what was claimed therein. *In re Sarett,* 327 F.2d 1005, 51 CCPA 1180 (1964). The board observed that in the specification of the Avery patent it is said:

. . . under normal conditions gaseous diffusion alone will provide a mass transfer rate of magnesium vapor from furnace to condenser sufficient to keep pace with the rate of production in the furnace.

\* \* \* \* \* \*

Ordinarily, diffusion of magnesium vapor alone is sufficient to provide for the mass transfer from the reactor to the condenser. However, if desired, a stream of the inert gas may be introduced into the furnace and fed through the condenser, in order to augment the magnesium flow to the condenser, in which case a recycle system may be utilized to recover the inert gas.

Clearly the claims of the Avery patent include the use of a substantially static atmosphere of inert gas such that mass transfer of magnesium from the reaction zone to the condensation zone is predominately by diffusion. But the claims of the Avery patent are not limited to the use of a substantially static atmosphere of inert gas. The patent claims also encompass a sweeping flow of inert gas from the reaction zone to the condensation zone, which might appear desirable in order to increase the mass transfer rate of magnesium. These are, however, the only possibilities; either the inert gas is substantially static (*i. e.,* has relatively small flow rate) or the gas moves in a sweeping flow, (*i. e.,* has a relatively large flow rate). Appellant argues that it would not be obvious to control the level of impurities in the magnesium metal product by controlling the flow rate of inert gas, and that it would not be obvious to use a substantially static atmosphere of inert gas to obtain a purer product. We believe that it would be within the skill of a routineer in the art to vary the flow rate of the inert gas atmosphere from the reaction zone to the condensation zone in the invention claimed in the Avery patent to attain maximum purity in the magnesium metal product. This being so, we conclude that the claims in the application merely define an obvious variation of the invention claimed in the Avery patent. Appellant has filed no terminal disclaimer.

We will therefore affirm the board's obviousness-type double patenting rejection of claims 1 through 23.

■ Claims 1 through 22 were further rejected as obvious in view of Magee et al. taken together with Parry under 35 U.S.C. § 103. We affirm the board's obviousness-type double patenting rejection recognizing that in due course appellant may file a terminal disclaimer. To avoid another appeal on this issue, we will consider the board's rejection under 35 U.S.C. § 103 at this time. To avoid any confusion with our prior discussion of obviousness-type double patenting we emphasize that no part of the specification of the Avery patent, which issued to appellant on an application of which the instant application is a continuation-in-part, may be used as prior art. Magee et al., the principal reference relied on by the examiner and the board, discloses a process for the continuous production of magnesium metal from a molten slag composition containing magnesium ores and an aluminum-silicon reducing agent in a submerged arc electric furnace. Magnesium vapors are evolved from the molten slag mixture, withdrawn from the furnace, and condensed to obtain liquid magnesium. Use of the aluminum-silicon reducing agent is said to be especially advantageous because it will liberate magnesium vapor at one atmosphere vapor pressure at a temperature somewhat below 1500°C., which is relatively moderate for the submerged arc electric furnace. The submerged arc electric furnace is said to be a particularly useful device for carrying out the thermal reduction of magnesium oxide, because the furnace can directly heat the reactants to a temperature high enough so that the vapor pressure of magnesium liberated in the reaction is at least one atmosphere. Operation of the furnace at atmospheric pressure is said to be very desirable for the continuous production of magnesium because feeding and discharging operations are simplified and stress on materials of construction is minimized. Magee et al. do not disclose the use of an inert gas in their process.

Indeed, if the vapor pressure of the magnesium vapor liberated in the reaction is at least one atmosphere and that (one atmosphere) is the pressure in the reaction zone, it is apparent that Magee et al. have no use for an inert or any other gas in their process.

The secondary reference, Parry, discloses that in the reduction of magnesium ores in high vacuum the reaction zone may be flooded with a suitable inert gas, for example, hydrogen, helium or argon. Because Magee et al. have no use for an inert gas in their process, we do not believe that it would have been obvious to combine the disclosures of Magee et al. and Parry. Neither reference contains the slightest suggestion to use what it discloses in combination with what is disclosed in the other. *In re Bergel,* 292 F.2d 955, 956–57, 48 CCPA 1102, 1105 (1961); *In re Adams,* 356 F.2d 998, 1001–1002, 53 CCPA 996, 1000 (1966). Furthermore, neither reference contains any disclosure of a substantially static atmosphere of inert gas nor of the mass transfer of magnesium vapor predominately by diffusion. We conclude that the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would not have been obvious at the time the invention was made to a person having ordinary skill in the art. We therefore reverse the rejection of claims 1 through 22 under 35 U.S.C. § 103.

■ Claim 23 was rejected as obvious in view of Bretschneider et al. or Peplinski under 35 U.S.C. § 103. The board concluded that there is no difference in the purified magnesium metal product recited in claim 23 and the products disclosed in the prior art, except that the products disclosed in the prior art are purer than appellant's product. Appellant urges that his product is the result of a single-step process, whereas the prior art products are the result of two-step processes; that differences in the products exist; and that it is not possible to recite these differences as product limitations. As examples of these alleged

differences appellant states that his product is cheaper, can be obtained faster, does not contain impurities introduced in prior art processes, and does contain impurities in substantially different proportions. There is no evidence of record to support any of these alleged differences. The claimed product is completely disclosed in the prior art. The complete disclosure of an invention in the prior art is the ultimate or epitome of obviousness. *In re Pearson,* 494 F.2d 1399 (CCPA 1974). We will therefore affirm the rejection of claim 23 under 35 U.S.C. § 103.

## Conclusion

The decision of the board is *affirmed.*

*Affirmed.*